UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIFE TIME FITNESS, INC.,<br>LTF REAL ESTATE COMPANY, INC.,<br>AND LTF CLUB MANAGEMENT<br>COMPANY, LLC, | § <br> § <br> § <br> § <br> § | |
| *Plaintiffs/Applicants,* | § <br> § | |
| | § | Civ. A. No.: _____ |
| v. | § <br> § | |
| KYLE BAUER, MONICA BAUER,<br>RENEW YOU, LLC DBA RENEW<br>YOU MD, AND RENEW YOU MEDI<br>DAY SPA, LLC, | § <br> § <br> § <br> § <br> § | |
| *Defendants/Respondents.* | § <br> § | |

**ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND
PERMANENT INJUNCTION**

Plaintiffs/Applicants Life Time Fitness, Inc. ("Life Time Fitness"), LTF Real Estate Company, Inc. ("LTF Real Estate"), and LTF Club Management Company, LLC ("LTF Club Management") (collectively "Life Time" or "Plaintiffs") file this Original Complaint and Application seeking a temporary restraining order, preliminary injunction, permanent injunction, and damages against Defendants/Respondents Kyle Bauer ("Mr. Bauer"), Monica Bauer ("Mrs. Bauer"), and ReNew You, LLC d/b/a ReNew You MD and ReNew You Medi Day Spa LLC (jointly "ReNew You") (collectively "Defendants"), and respectfully show the following:

**I.     Summary**

This is a case in which, instead of advancing his employer's interests, a high-level executive elected to pilfer its proprietary business information, duplicate its business model, and

use its personnel to plan, develop, and open a competing business in breach of both his fiduciary and contractual duties. This is a classic case of an employee taking corporate opportunities and resources for personal gain. He should be stopped.

For 5 ½ years, Kyle Bauer was a highly-paid Regional Vice President for Life Time Fitness—which owns and operates 114 full-service health and fitness clubs—in charge of the Texas, Georgia and Alabama regions with 25 clubs. When in 2010 he sold his Kingwood, TX health club, Quantum Lifestyle Centers, LLC d/b/a QLS Family Fitness Wellness and Sports ("QLS"), to Life Time for more than $5 million, Mr. Bauer signed a strong non-compete agreement that bars him from interfering with Life Time's business, including its relationships with employees, customers, agents, representatives and vendors. When Mr. Bauer became Life Time's employee, he had clear fiduciary duties of loyalty, candor, fair dealing and confidentiality, as well as responsibilities to comply with Life Time's Code of Conduct and Business Ethics. And yet Mr. Bauer breached those duties repeatedly, egregiously and surreptitiously throughout 2015 by using Life Time's time, computers, proprietary information, and employees to build a medi-spa and weight loss business, ReNew You MD, that competes directly with Life Time in a new office that recently opened a mere 3.7 miles from Life Time's Houston City Centre club. Among other acts:

- Mr. Bauer copied, verbatim, detailed medi-spa financial statements from Life Time, and used them to build financial pro formas for his nascent business (initially called "New Me MD" but later renamed "ReNew You");

- Mr. Bauer picked off Life Time's own consulting physician, Dr. R. Scott Yarish ("Yarish") (under contract to oversee Life Time's Houston medi-spas) to partner 50/50 with him as an owner of ReNew You. Without disclosing his interest in ReNew You, Mr. Bauer then rebuffed Life Time's top spa executive's request for his help in extending Yarish's contract as Life Time's Houston Medical Director, purportedly "terminating" the contract instead to coincide with the opening of ReNew You;

- Mr. Bauer persistently (but ultimately unsuccessfully) solicited Life Time's regional registered dietician in Texas—a top performer—to leave Life Time to run the weight loss business of ReNew You, going so far as to send her his business plan and a proposed compensation package, both of which borrow heavily from Life Time's business model;

- Mr. Bauer sought out detailed confidential proprietary information—either in documents or conversations—from Life Time employees with expertise on the services or programs he sought to offer through ReNew You, including among others Life Time's spa employee performance metrics, hormone replacement therapy operations, and medi-spa patient care specialist role;

- Mr. Bauer prepared business plans, negotiated a partnership agreement, opened a business bank account (on which Mr. Bauer, his wife and Dr. Yarish are signers), sought a 4-year commercial term loan, created a logo for ReNew You, developed his employee benefits, reviewed and previewed Monica Bauer's weekly business development tasks and did other things to create the business—all using Life Time's computers and resources;

- Mr. Bauer, the CEO, and his wife Monica Bauer, the COO, of ReNew You, both used Mr.Bauer's assistant at Life Time —an employee paid by Life Time—to facilitate their development of ReNew You, including various iterations of its financial pro formas among other tasks;  and

- Mr. Bauer did all of this while employed by Life Time without disclosing his role in any of it even as he told Dr. Yarish in their negotiations over his role as CEO and his compensation "needs" with ReNew You: "You know my objective is to step away from Lifetime as soon as possible."

Life Time fired Mr. Bauer on January 4, 2016.  Based on a site visit that day, ReNew You appears to be operating and, because it was built with pilfered proprietary resources from Life Time and its vendors and because it offers, or proposes to offer, the same or similar services at Life Time, it should be temporarily enjoined and permanently barred from interfering with Life Time's business.

## II.    Parties

1.      Plaintiff/Applicant Life Time Fitness, Inc. is a Minnesota corporation with its principal place of business located at 2902 Corporate Place, Chanhassen, Minnesota 55317.  Life Time Fitness, Inc. is the parent company of the other corporate plaintiffs/applicants.

2.      Plaintiff/Applicant LTF Real Estate Company, Inc. is a Minnesota corporation with its principal place of business in Minnesota. LTF Real Estate Company, Inc. is a subsidiary of Life Time Fitness, Inc.

3.      Plaintiff/Applicant LTF Club Management Company, LLC is a Delaware corporation with its principal place of business in Minnesota.  LTF Club Management Company, LLC is a subsidiary of Life Time Fitness, Inc.

4.      Defendant/Respondent Kyle Bauer is an individual residing at 20806 Kingscrown Court, Humble, TX 77346.  Mr. Bauer is, or intends to be, a member or manager of, or otherwise employed by, ReNew You.  Life Time employed Mr. Bauer from June 1, 2010, to January 4, 2016.  Mr. Bauer may be served with process at his home address or wherever he may be found.

5.      Defendant/Respondent Monica Bauer is an individual residing at 20806 Kingscrown Court, Humble, TX 77346.  Mrs. Bauer is, or intends to be, a member or manager of, or otherwise be employed by ReNew You.  Life Time employed Mrs. Bauer from June 1, 2010, to December 16, 2010, and from December 1, 2011, to December 20, 2014.  Mrs. Bauer may be served with process at her home address or wherever she may be found.

6.      Defendant/Respondent ReNew You, LLC d/b/a ReNew You MD is a Texas Limited Liability Company located at 950 Threadneedle Street, Suite 280, Houston, TX 77079.  ReNew You, LLC may be served with process through its registered agent, Kyle J. Bauer, at 950 Threadneedle Street, Suite 280, Houston, Texas 77024, or wherever he may be found.

7.     ReNew You Medi Day Spa, LLC is a Texas Limited Liability Company located at 950 Threadneedle Street, Suite 280, Houston, Texas 77024, or wherever he may be found.  ReNew You, LLC may be served with process through its registered agent, Kyle J. Bauer.  Life Time's references to "ReNew You" in this Complaint refer to all ReNew You corporate entities.

### III.     Jurisdiction

8.     This Court has jurisdiction over this matter based upon 28 U.S.C. §1331 because this case involves application of a federal statute, the Computer Fraud and Abuse Act, 18 U.S.C. §1030.

9.     This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

10.    This Court has supplemental jurisdiction over this matter based on 28 U.S.C. § 1367 for the claims arising under common law breach of contract and tort.

### IV.     Venue

11.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391(b).  In the QLS Asset Purchase Agreement, Life Time agreed that "any legal or equitable action or proceeding arising under or in connection with this Agreement which it may choose to bring against [Mr. Bauer] shall be brought exclusively in any Federal or state court within the State of Texas, and any court to which an appeal may be taken in any such litigation."   A true and correct copy of the Asset Purchase Agreement is attached hereto as Exhibit 1 and incorporated herein.

12.    Venue is also proper in this Court because all or a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## V.      Factual Background

**A.      Life Time Owns and Operates Full-Service Health and Fitness Clubs that Offer LifeSpa, MediSpa, and Health and Wellness Services, including Weight Loss Services.**

13.      Life Time designs, builds, and operates full-service health and fitness clubs throughout the United States and Canada.

14.      Life Time owns and operates 114 clubs, including six clubs in the greater Houston market:  Champions, Cinco Ranch, City Centre, Kingwood, Lake Houston, and Sugar Land. Life Time's clubs offer not only athletic and fitness services, but also spa services, health and wellness services and, in some clubs, medi-spa services.

15.      Life Time's spa and medi-spa services include skin care therapy, enhancements and medical aesthetics (e.g., waxing, facials, peels), laser services and treatments (e.g., laser hair reduction, fractional resurfacing), massage and body work, and injectables and dermal fillers. Life Time contracts with consulting physicians to oversee or provide its medi-spa services.

16.      Life Time offers spa services in all six of its Houston clubs, and medi-spa services in at least three of its clubs—City Centre, Lake Houston, and Sugar Land.

17.      Life Time's City Centre club, located at 815 Town & Country Lane, Houston, TX 77024 ("Life Time City Centre"), is Life Time's top-performing spa and medi-spa in Houston.

18.      ReNew You's office recently opened at 950 Threadneedle St., Suite 280, Houston, Texas 77079, which is 3.7 miles away from Life Time's City Centre location.

19.      Life Time's health and wellness services, including its weight loss programs, include among other things lab testing (through a blood draw), metabolic assessments, nutrition coaching, detoxification products, nutritional supplements, weight loss challenges and events,

hormone replacement therapy, and online and mobile tools.  Life Time cross-markets its LifeSpa services with its health, wellness and fitness programs.

20.     Life Time has invested substantial resources into developing its proprietary services and programs to benefit its customers.

**B.      When Life Time purchased his QLS health club and hired him as its Regional Vice President, Kyle Bauer promised not to compete with, or misuse the corporate information and resources of, Life Time.**

21.     On May 27, 2010, Life Time acquired QLS, a health club located in Kingwood, Texas, from Mr. Bauer for approximately $5.4 million pursuant to an Asset Purchase Agreement ("QLS APA").  Mr. Bauer had a 75% stake in the QLS LLC and managed the club, with a silent partner holding the remaining 25% stake.

22.     Life Time rebranded QLS as Life Time Fitness – Kingwood.

23.     Life Time's acquisition of QLS is consistent with Life Time's growth plans, and Life Time intends to further expand its services throughout Texas consistent with commercial opportunities.

24.     Pursuant to the QLS APA, and in exchange for the substantial purchase price, Mr. Bauer as the Shareholder agreed to the following non-compete and conflict of interest provisions:

> 10.6 <u>Non-Compete</u>.
>
> (a)     The Shareholder covenants and agrees that for a three (3) year period following his employment with Purchaser, Shareholder will not:
>
> ...
>
> > (ii)     call upon, solicit, contact or serve any clients or customers that have had a relationship with Purchaser or were a customer of the Purchaser during the twelve (12) months preceding the Closing;

7

(iii)    interfere with the business of Purchaser whether by way of interfering with or disrupting the Purchaser's relationship with employees, customers, agents, representatives or vendors; or

(iv)    employ or attempt to employ (by soliciting or assisting anyone else in the solicitation of) any of Purchaser's employees or former employees who left Purchaser' employ voluntarily within the twelve (12) month period prior to the Closing on behalf of any other entity, whether or not such entity competes with Purchaser.

\*\*\*

(b)    Shareholder has carefully read and considered the provisions of this Section 10.6, and having done so agrees that the duration, scope, restrictions and obligations set forth herein are fair, reasonable and reasonably required for the protection of the Purchaser's interests and the interests of its officers, partners and employees. Shareholder covenants that he has not signed any other agreement with any other entity or person that would violate the provisions of this Section 10.6.

\*\*\*

16.5  <u>Conflicts of Interest</u>. Purchaser has a policy prohibiting "conflicts of interest," except under guidelines approved by the Purchaser's board of directors. According to Purchaser's policy, a "conflict of interest" exists when a person's private interest interferes in any way with the interests of Purchaser. It is Purchaser's policy that (i) Purchaser's employees should avoid any direct or indirect business connection with Purchaser's customers, suppliers and competitors, except on behalf of Purchaser, (ii) Purchaser's employees are not allowed to work simultaneously for a competitor, customer or supplier of Purchaser, and (iii) Purchaser's employees should not receive improper personal benefits (directly or indirectly, such as through a family member) as a result of the employee's position in Purchaser. The Seller is not aware of any relationship or arrangement that violates Purchaser's policy described above and agrees that it will not knowingly take any action that would result in such a violation.

<u>Exhibit 1</u> at Sections 10.6 and 16.5.

25.    In June 2010, in connection with the purchase of QLS, Mr. Bauer became Life Time's Regional Vice President for the Houston Market, a trusted, high-level leadership position.

26.     As a Regional Vice President, Mr. Bauer was highly compensated, earning a substantial salary, incentives, and restricted stock.

27.     Likewise, in June 2010, Monica Bauer became the LifeSpa Department Head at Life Time Fitness – Kingwood, a position she held for six months.  She left Life Time, but rejoined the company in December 2011 as a Field Training Specialist at Life Time's Lake Houston club. In September 2014, she was promoted to Regional Life Spa Manager for the Houston market before she terminated her employment in December 2014.

28.     Throughout their employment, the Bauers had access to Life Time's confidential, proprietary, and trade secret information in order to perform their duties and further Life Time's business.

29.     The Bauers also had access to Life Time's computers, email system, information technology systems, financial performance information, marketing information, vendor and supplier lists, cost information, operational strategy and procedures, and other confidential and trade secret information.

30.     In connection with their employment, the Bauers were required to abide by a Team Member Handbook (Exhibit 2), a Technology Asset Management Policy (Exhibit 3), an Information Security Policy (Exhibit 4), and a Code of Business Conduct and Ethics (Exhibit 5).

31.     Pursuant to the Team Member Handbook, the Bauers agreed that:

> …Life Time Fitness provides information-technology systems and equipment to Team Members for the purpose of conducting business, including but not limited to desktop and laptop computers…

Exhibit 2.

32.     Pursuant to the Technology Asset Management Policy, the Bauers agreed that:

> Users must only utilize Life Time acquired and licensed technology (hardware and software) and must only be used in support of business goals and objectives.
>
> ***
>
> Users' access to Life Time Technology resources must be based on business need to perform job duties.

Exhibit 3.

33.     Pursuant to the Information Security Policy, the Bauers, as "Users" agreed:

> Users must not copy or store Life Time data on unauthorized or personal media storage, including but not limited to non-company email systems, internet file storage services, flash drives, and hard drives.
>
> All use of Life Time technology resources must be in support of business goals and objectives and must be authorized.
>
> User's access to Life Time technology resources must be based on business need to perform job duties.
>
> Users must only utilize Life Time acquired and licensed hardware and software to perform job duties.

Exhibit 4.

34.     Pursuant to the Code of Business Conduct and Ethics, the Bauers were required to

abide by the following provisions:

> **Conflicts of Interest**
> A "conflict of interest" exists when your private interests interfere in any way, or even appear to interfere, with the interests of the Company. A conflict situation can arise when a team member, officer or director takes actions or has interests that may make it difficult to perform his or her work objectively and effectively. You and your family members are expected to avoid any outside interests or activities that could be advanced at the expense of the interest of Life Time Fitness. Such involvement could cause a division in team member loyalty and thus create a potential conflict of interest.

While it is not possible to develop a comprehensive set of rules covering all circumstances or serving as a substitute for good judgment, the following are examples of types of activities that could be considered a conflict of interest:

- Consulting with or employment by a competitor, supplier, or customer of Life Time Fitness;
- Holding a substantial equity, debt, or other financial interest in any competitor, supplier, or customer of Life Time Fitness if such interest could influence your actions as a team member, officer or director;
- Having a financial interest in any transaction involving the purchase or sale by Life Time Fitness of any products, materials, equipment, services, or property, other than through Company-sponsored programs;
- Using team members, members, materials, equipment, or other assets of Life Time Fitness for any unauthorized purpose;
- Accepting any cash, gifts, entertainment, or benefits in violation of the "Gifts, Meals and Entertainment" section below;
- Acting as a supplier or subcontractor to the Company in your own right or through a company in which you or a family member are a part owner;
- Trading services with another team member (e.g., a massage for personal training);
- Offering services that are normally provided in the course of your employment outside of Life Time Fitness premises without prior approval from your supervisor or manager;
- Any arrangement or activity (direct or indirect) which could conflict, or may reasonably be viewed as conflicting with your responsibilities at Life Time Fitness; and
- Loans to, or guarantees of obligations of, team members, officers, directors or a member of your immediate family.

Each team member, officer and director is responsible for avoiding conflicts of interest as well as the appearance of such conflicts. A conflict situation may not always be straightforward, so in the case of any confusion, your supervisor should be consulted. Any team member, officer, or director who becomes aware of a conflict or potential conflict should bring it to the attention of a supervisor, manager, or other appropriate personnel or consult the procedures described herein. The Company's General Counsel must approve any exceptions.

**Corporate Opportunities**
Team members, officers and directors are prohibited from (a) taking for themselves opportunities that are discovered through the use of company property, information or position without the consent of the Company's General Counsel, or, in the case of officers and directors, the Company's Board of Directors, (b) using company property, information, or position for personal gain, or (c) competing with the Company. Team members, officers and directors owe a duty to the Company to advance its legitimate interests when the opportunity to do so arises.

**Protection and Proper Use of Company Assets**

All team members, officers and directors must protect the Company's assets and ensure their efficient use. Theft, carelessness, and waste have a direct impact on our success. Company equipment should only be used for legitimate business, though reasonable incidental personal use may be permitted.

**Business Communications**

Business records and communications often become public and can easily be misunderstood out of context….All communications should be addressed only to those persons who have a legitimate business purpose for knowing the information…

**Confidentiality of Business Information**

We understand and value the trust that our members and team members place in us when they share information with us. We have physical, electronic and procedural safeguards in place to keep information about our members, team members, personnel/team member contact information, etc. secure. All team members, officers and directors must comply with these safeguards in keeping confidential information provided to them by Life Time Fitness or its members, except when disclosure is authorized by the Legal Department or required by laws or regulations. Confidential information includes, but is not limited to, all non-public information that might be of use to competitors, or harmful to the Company, its team members, officers, directors and/or members, if disclosed. It also includes information that team members, officers, directors, suppliers, and members have entrusted to Life Time Fitness. The obligation to preserve confidential information continues even after employment ends.

**Intellectual Property**

"Intellectual property" includes: trade secrets, patents, trademarks and copyrights, as well as customer or member lists (including the customer lists kept by massage therapists, stylists, personal trainers and membership advisors), prospective customer or member lists, lists or information, business, marketing and service plans, manufacturing ideas, designs, databases, records, salary information and any unpublished financial data and reports, and any other creations of proprietary information of Life Time Fitness. We depend on the protection of our intellectual property and expect our competitors to respect the laws governing it. Life Time Fitness too is legally and ethically obligated to respect the intellectual property rights of suppliers, members, business partners and competitors. Unauthorized use or distribution of our intellectual property violates the Code and could also be illegal and result in civil and/or criminal penalties.

Exhibit 5.

**C.    Dr. Robert Scott Yarish Becomes Life Time's Consulting Physician for its Houston Medi-Spas in a Relationship Managed by Monica and Kyle Bauer.**

35.    In October 2012, Yarish contracted with Life Time to serve as a consulting physician for the medi-spas in its Houston clubs.

36.    Under the contract, Yarish performs or provides medical oversight for Life Time's performance of certain medi-spa services.

37.    Yarish's contact has not been terminated pursuant to its terms.

38.    As a supplier or vendor of Life Time, Yarish derived, and continues to derive, benefits from his relationship with the company.

39.    In and through their respective positions with Life Time, the Bauers built a relationship with Dr. Yarish.

40.    In December 2014, Monica Bauer left her position with Life Time as the Regional Spa Manager for Houston to work directly for Dr. Yarish in a plastic surgery practice located very close to Life Time Fitness – City Centre.

**D.    Throughout 2015, Kyle and Monica Bauer Built ReNew You, With Dr. Yarish, Based on Misappropriated Information and Resources, Breaches of Fiduciary Duties, and Interference with Employment and Contractual Relationships.**

41.    In 2015, while Mr. Bauer was employed by Life Time, Dr. Yarish was under contract with Life Time, and Monica Bauer worked as a consultant or employee for Dr. Yarish, they began developing ReNew You, a business that would provide spa, medi-spa and health and wellness services, including weight management services, in direct competition with Life Time.

**1. Kyle Bauer Misappropriated Life Time's Confidential, Proprietary Information and Trade Secrets to Build ReNew You.**

42.     Using his senior position at Life Time, Mr. Bauer misappropriated Life Time's confidential proprietary business information and trade secrets to develop ReNew You. Monica Bauer also misappropriated Life Time's trade secrets through Mr. Bauer' s misappropriation.

43.     Mr. Bauer misappropriated financial and operational information related to a substantially similar medi-spa, Shape Medical Weight Loss Center ("Shape Med"), which is owned and operated by Life Time in Atlanta, Georgia, a region Mr. Bauer managed for Life Time.

44.     In February 2015, prior to a visit to Shape Med, Mr. Bauer solicited and received from a Life Time executive highly confidential financial information concerning Shape Med reflecting Life Time's actual and/or expected operational performance of the center, including detailed revenue projections, operating expenses and profitability expectations.

45.     During his visit in late February 2015, Mr. Bauer probed the medical director of Shape Med in a closed door meeting for further information on the center's financial performance, marketing efforts, operations, and products and services.

46.     In early March 2015, Mr. Bauer then copied and saved the Shape Med financial information into a new document entitled "NewMe MD pro forma" on his Life Time computer. (NewMe MD was an earlier iteration of ReNew You.) The 2015 and 2016 pro forma financial numbers for "NewMe MD" duplicate exactly the 2014 and 2015 pro forma financial numbers for ShapeMed.

47.     Thereafter, Mr. Bauer further developed pro forma financial statements for ReNew You based on the Shape Med financial information, using both his Life Time administrative assistant and Life Time's email computer systems. (Exhibit 6).

48.      In December 2015, Mr. Bauer then used the Shape Med-based financial information and Life Time's computer systems to open a bank account (with both Bauers and Yarish as signers), obtain a loan and/or obtain other merchant services for ReNew You from Texas Capital Bank. (Exhibit 7).

49.      Mr. Bauer also solicited and used proprietary information about Shape Med to develop and design ReNew You's operations, including by soliciting information directly from Life Time's Life Spa Regional Manager for Atlanta, Georgia and Dallas, Texas ("Georgia/Central Texas Regional Spa Manager"), who is heavily involved in Shape Med's operations.

50.      On December 16, 2015, Mr. Bauer solicited from the Georgia/Central Texas Regional Spa Manager details on the patient care coordinator role at Shape Med, including a job description, all of which he subsequently forwarded to his personal email account for use, upon information and belief, in developing or refining a similar position at ReNew You.

51.      On December 19 and 21, 2015, Mr. Bauer also solicited from the Georgia/Central Texas Regional Manager detailed operational information and procedures concerning Shape Med's hormone replacement therapy ("HRT") including information about cost/membership, administration process, marketing, and insurance coverage among other topics.  He also solicited information about HCG, a medical weight loss product that had been offered by Shape Med.

52.      On December 18, 2015, Mr. Bauer forwarded to his personal email account information about Life Time's LifeSpa performance programs ("Spa Performance Programs") which he obtained from another spa director, Life Time's Regional Director for the West based in Colorado.

53.     One Spa Performance Program was Life Time's Performance Recognition Program, which sets forth performance goals for traditional spa technicians, medi-spa technicians, spa coordinators, and spa managers to achieve in order to win incentives.

54.     A second Spa Performance Program was Life Time's Levels Program, which sets forth revenue and retention goals for Life Time's massage therapists, estheticians, nail technicians, stylists to qualify for certain benefits and higher-level positions (senior, master and elite), as well as suggested consumer pricing by level.

55.     Upon information and belief, Mr. Bauer took information about Life Time's Spa Performance Programs for use in developing similar programs for ReNew You employees.

56.     Mr. Bauer's "end objective was to create a turnkey business system/SOP for RNYMD" by comparing Yarish's documents to "what we have," including information and documents he took from Life Time.  (Exhibit 8).

**2. Kyle Bauer and Monica Bauer Interfered with Life Time's Vendor Relationships.**

57.     Mr. Bauer and/or Mrs. Bauer also interfered with Life Time's relationships with one or more vendors.

58.     In spring or summer of 2015, while Yarish was serving as Life Time's consulting physician, Mr. Bauer solicited him to serve as his business partner and the consulting physician or medical director of ReNew You.  Mr. Bauer and Yarish would each own a 50% interest in the business.  (Exhibit 9).

59.     Upon information and belief, Monica Bauer participated in or had knowledge of the solicitation of Yarish as a business partner for ReNew You, even while he was Life Time's consulting physician.

60.     On August 4, 2015, Dr. Yarish filed a certificate of formation for ReNew You MD, PLLC with the Texas Secretary of State.  Yarish was the registered agent.  His PLLC was later converted to an LLC of which Mr. Bauer is the registered agent and is, or will be, the managing member.

61.     On August 26, 2015, Mr. Bauer forwarded from his Life Time email account a staff communication to be used by Yarish to announce their "new venture"— a "comprehensive age management and medical weight loss brand."  Monica Bauer was identified as Yarish's "liason" or "consultant" who would help "transition" the business and move its offices to a "new location."  Mr. Bauer's interest and role in ReNew You was not disclosed.

62.     On August 27, 2015, without knowledge of their business venture together, Life Time's Spa Executive Vice President, Tami Kozikowski, reached out to Mr. Bauer for his help in extending Dr. Yarish's contract as Life Time's Houston Medical Director.

63.     Without disclosing his own interest in or the nature and scope of the new business (except to note that Monica Bauer will run it), Mr. Bauer told Life Time's spa executive that Yarish is "going to pull out as Medical Director."  Yarish himself did not terminate his contract with Life Time.

64.     Mr. Bauer represented that Yarish would remain in his role for another two months until Life Time found a replacement.

65.     Mr. Bauer did not assist Life Time in extending Yarish's contract, finding a replacement consulting physician or medical director for its Houston medi-spas, or otherwise disclose or discuss any further the potential corporate opportunity Life Time may have had with Yarish.

66.     Rather, on October 6, 2015, Mr. Bauer met privately with Yarish to continue their ReNew You business discussions.  In advance of the meeting, Mr. Bauer emailed Yarish from

his Life Time account partnership terms, management and salary terms, and growth plans for
ReNew You.  Mr. Bauer told Yarish that he will be ReNew You's CEO, with a $250,000
minimum base salary to start, $100,000 in additional base salary for each new clinic they opened,
and a 5% quarterly gross revenue override bonus per clinic.  Monica Bauer will be the COO, but
have no ownership interest.  Mr. Bauer wanted to open 2 to 5 clinics in the next 24 months.  Mr.
Bauer told Yarish:  "You know my objective is step away from Lifetime as soon as possible."

67.     Upon information and belief, Yarish also drafted a proposed LLC Company Agreement
for ReNew You ("LLC Agreement") in or about October 2015.  Among other terms, the LLC
Agreement reflects a 50% ownership split with Mr. Bauer, with no ownership by Monica Bauer.

68.     In late December, 2015, Mr. Bauer used Life Time's email system to review comments
on the LLC Agreement.

69.     Upon information and belief, Mr. Bauer and Yarish have finalized, or intend to soon
finalize, terms of their ReNew You Company Agreement.

70.     With respect to other vendors, ReNew You business plans found in Life Time's
technology systems also show that Mr. Bauer intended to approach vendors or suppliers
currently used by Life Time in order to provide the same or similar services to ReNew You,
including Thorne for nutritional supplements and LabCorp for lab testing.  (Exhibit 8).

**3.  Kyle Bauer and Monica Bauer Interfered with Life Time's Employment and
     Contractual Relationships with its Employees.**

71.     Mr. Bauer and Mrs. Bauer also interfered with Life Time's employment and
contractual relationships with Life Time employees in an effort to develop ReNew You.

72.     ReNew You offers, or intends to offer, health and wellness services, including
weight loss or weight management services, as a component of its business.

73.     Mr. Bauer directly solicited Life Time's Regional Registered Dietician for its Houston clubs, Jennifer Becker Hutchinson, to leave her employment with Life Time to develop and grow ReNew You's comprehensive weight management business.

74.     Ms. Becker is a top performer at Life Time, having achieved recognition within the company for her financial performance and work with clients and her team of nutrition, weight loss and personal training specialists, in various roles since 2011 ranging from Life Time - Lake Houston's Registered Dietician, to Life Time - Kingwood's Personal Training Department Head (a job for which Mr. Bauer interviewed her), to Life Time's first Regional Registered Dietician for its Texas market.

75.     Ms. Becker has a valid non-compete agreement with Life Time. In his role as Regional Vice President with ultimate oversight of Ms. Becker's work for Life Time, Mr. Bauer knew or should have known about Ms. Becker's non-compete agreement.

76.     Mr. Bauer nonetheless sought out Ms. Becker on multiple occasions for the purpose of inducing her to leave Life Time for ReNew You.    He told her that he wanted a weight management program to be a central component of his spa he planned to open, and that he wanted her to develop and run that piece of his business.

77.     On August 22, 2015, in a further attempt to solicit her, Mr. Bauer emailed to Ms. Becker from his Life Time email account a comprehensive outline of the weight management program he intended to implement at ReNew You. ("Weight Management Plan").  (Exhibit 10).

78.     Mr. Bauer's Weight Management Plan contained detailed information on ReNew You's mission, passions, philosophy, products and services, many of which duplicate with Life Time's proprietary programs, techniques and names as described below.

79.     In a further attempt to solicit her, and advance ReNew You's weight management program, Mr. Bauer presented Ms. Becker with a ReNew You compensation plan—simply tagged onto her Life Time compensation plan—in which he offered her a $90,000 total first-year opportunity to work at ReNew You, as well as ReNew You stock.

80.     Mr. Bauer developed both the Weight Management Plan and Ms. Becker's compensation plan while he was employed by Life Time, using Life Time's technology systems, and to advance the interests of ReNew You, not Life Time.

81.     ReNew You's Weight Management Program competes, or will compete, directly with Life Time's health and wellness programs.

82.     Monica Bauer also interfered with Life Time's employment and contractual relationships with employees.

83.     Upon information and belief, Monica Bauer recruited and/or hired Life Time spa employee, Sarah Shelby Hight, to work with her at ReNew You, at its new Threadneedle location which is within five miles of Life Time Fitness – City Centre.

84.     Ms. Hight has a valid non-compete agreement with Life Time that prohibits such employment.  Monica Bauer knew that Ms. Hight had a non-compete because she signed it on behalf of Life Time in June 2010 when she managed the Life Time Fitness – Kingwood spa.

85.     Upon information and belief, Mr. Bauer also knew or should have known that Ms. Hight had a valid non-compete agreement with Life Time, and yet did not act on behalf of Life Time to enforce it.

86.     Mr. Bauer and/or Monica Bauer also solicited Monique Adamo, Mr. Bauer's administrative assistant/business administrator at Life Time, to work at ReNew You.  Among other things, Mr. Bauer also asked Adamo, Life Time's employee, to assist him in preparing

ReNew You's pro forma financial statements, which she did.  Rather than focus on Life Time's business operations, Adamo helped Mr. Bauer create and operate ReNew You.

87.     Upon information and belief, Mr. Bauer also knew or should have known that Ms. Adamo was subject to employment policies at Life Time that prohibited her from engaging in such conduct.

88.     By their efforts to recruit, solicit, and/or hire Life Time employees to work at ReNew You, the Bauers have interfered with Life Time's employment relationships and contractual rights.

**4.     Kyle Bauer Used Life Time's Technology Systems and Resources to Build ReNew You.**

89.     While employed by Life Time, and in addition to his conduct described above, Mr. Bauer also used Life Time's technology, staff and other resources to develop ReNew You by, among other things:

    A.     Drafting and revising detailed business plans, agendas and checklists;

    B.     Building proformas, budgets, forecasts or financial models;

    C.     Obtaining quotes for or leasing equipment needed to operate ReNew You;

    D.     Developing logos for ReNew You;

    E.     Developing a website for ReNew You;

    F.     Developing employee benefits for ReNew You employees;

    G.     Reviewing and previewing Monica Bauer's work at ReNew You; and

    H.     Negotiating partnership agreement terms with Yarish.

90.     Upon information and belief, and as additional investigation may show, Mr. Bauer and Monica Bauer used Life Time's technology, staff and resources for the development of other aspects of ReNew You.

E.      **Using its Misappropriated Business Models, Employees and Vendors, ReNew You Competes, or Will Compete, Directly with Life Time in Spa, Med-Spa and Health and Wellness Services.**

91.     Life Time offers numerous spa, medi-spa and health and wellness services, including weight loss ("Life Time's Services").

92.     ReNew You offers, or intends to offer, services that are the same or similar to Life Time's Services in Houston and eventually nationally, including at ReNew You's new office which is less than 4 miles from Life Time's Houston City Centre club.

93.     In the spa and medi-spa market, Life Time offers the same or substantially similar services as ReNew You offers or plans to offer ("Competing Spa and Medi-Spa Services") as follows:

- Skin care therapy, enhancements and medical aesthetics such as:
  - Skin or complexion analysis
  - Eyebrows and lashes
  - Waxing
  - Traditional facials
  - Hydrafacials
  - Dermaplaning
  - Skin Pen microneedling
  - Peels (both traditional spa peels and medical-grade peels)

- Laser services and treatments such as:
  - Laser hair reduction/removal
  - Photo rejuvenation/therapy (fotofacials, skin tightening)
  - Fractional resurfacing

- Massage and body work services

- Injectables and dermal fillers

A chart comparing services is attached as Exhibit 11.

94.     In the health and wellness market, Life Time offers the same or similar health and wellness services, including weight management services, as ReNew You offers or plans ("Competing Health and Wellness Services") as follows:

- Lab tests (blood panels)

- Metabolic assessments (e.g., resting metabolic assessment, or "RMA")

- Detoxification programs, such as Life Time's 14-Day D.TOX program

- Nutritional supplements, including Life Time's
    i.    Branded supplements
    ii.   Customized supplements
    iii.  Auto ship program (recurring purchases)

- Nutrition coaching/counseling, including with a registered dietician
    i.    Nutrition plans
    ii.   Healthy meals and recipes
    iii.  Grocery lists and shopping

- Challenges, events or rewards, such as Life Time's
    i.    90-Day Weight Loss Challenge (90-day contest with weekly events)
    ii.   10K a Day Challenge

- Hormone replacement therapy ("HRT"), including bio-identical HRT

- Internet or mobile services, such as
    i.    Fitness videos or coaching
    ii.   Apps or other technology that help clients track exercise, nutrition

- Programs that integrate or bundle two or more these components, including
    i.    CORE 3, Life Time's proprietary integrated approach to health and wellness which combines health assessments, nutrition plans, and exercise plans.
    ii.   Weight management and weight loss programs, which integrate nutrition, supplementation, exercise/training, challenges, apps and other elements for individuals or groups of customers.

A chart comparing services is attached as Exhibit 11.

95.   ReNew You even proposes to use the same or similar name or mark, "CORE," that Life Time uses for its flagship health and wellness program.  Life Time's proprietary, trademarked

"CORE 3" program provides integrated health assessments ("know it"), nutrition plans ("nourish it") and workouts ("move it") that lead to long-term health and wellness success.

96.    ReNew You's services—built with Life Time's resources and modelled on its approach—will compete directly with the Life Time Services.

**F.    Upon Discovery of His Conduct, Life Time Promptly Terminated Kyle Bauer and Demanded that He and His Partners Cease and Desist, Which Demand He Has Rejected.**

97.    Life Time terminated Mr. Bauer's employment on January 4, 2016, shortly after it discovered the conduct described above.

98.    On January 4, 2016, Life Time sent a letter to Mr. and Mrs. Bauer, Yarish, and ReNew You demanding that they cease and desist the conduct, and informing them that Life Time would enforce its legal rights if they refused.

99.    Subsequently, counsel for Defendants, Kimberly Spurlock, Spurlock & Associates, P.C., 17280 West Lake Houston Parkway, Humble, Texas 77346 denied that Mr. Bauer had engaged in any unlawful behavior.  Ms. Spurlock has agreed to accept service on behalf of Defendants.

100.    Mr. Bauer independently stated that he will "100% stand behind what [he] signed and will NOT violate [his] signed non-compete," and offered to allow Life Time to inspect ReNew You.

101.    Life Time has provided Defendants notice through their counsel of this action.

102.    Because of the harm it has suffered and will continue to suffer as a result of Defendants' unlawful activity, Life Time brings this suit.

## VI.    Causes of Action

**Count 1:        Violation of the Computer Fraud and Abuse Act by Kyle Bauer.**

103.    Life Time incorporates by reference the foregoing paragraphs herein.

104.    Mr. Bauer's actions in using and misappropriating Life Time's confidential, proprietary, and trade secret information from Life Time's computer and email system in furtherance of ReNew You, a competing business, to the detriment of Life Time, constitute violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030.

105.    Mr. Bauer did not inform or notify Life Time of his usage of Life Time's confidential, proprietary and trade secret information in furtherance of ReNew You.

106.    Mr. Bauer was authorized to use Life Time's computer system only in order to advance the business interests of Life Time, and Mr. Bauer was expressly prohibited from using the system and the data contained therein for his own purposes.

107.    Mr. Bauer's actions in using and misappropriating Life Time's data were done without authorization, or in excess of any authorization he may have had, from Life Time to use its computer and email systems.

108.    When Mr. Bauer used the system and the data for himself, and for the benefit of third parties, including a direct competitor, Mr. Bauer acted for his own benefit and for the benefit of third parties, including ReNew You and Mrs. Bauer.

109.    In using Life Time's confidential information and trade secrets from Life Time's computer system to help create, form, and otherwise advise ReNew You, a direct competitor, formed by Mr. Bauer, Mrs. Bauer, and Dr. Yarish, Mr. Bauer acted without authorization and beyond the scope of his employment.

110.    Life Time's computer system is used extensively in interstate commerce as it assists in the management and operation of Life Time's business operations throughout the United States.

111.    Indeed, Mr. Bauer utilized Life Time's computer and email systems to obtain confidential and trade secret information pertaining to Life Time's ShapeMed business in Atlanta, Georgia in order to use that information to develop pro forma financial statements for ReNew You.

112.    Mr. Bauer's actions were part of a scheme to injure and harm Life Time and its business operations.  Mr. Bauer acted in a calculated and dishonest manner to obtain Life Time's trade secrets and confidential information, and damaged the integrity of its data through his efforts. Life Time has suffered losses and damages by reason of these violations in excess of $5,000 in less than a one-year period of time.

**Count 2:        Breach of Contract - Asset Purchase Agreement by Kyle Bauer.**

113.    Life Time incorporates by reference the foregoing paragraphs herein.

114.    Pursuant to the QLS APA, Mr. Bauer is prohibited from competing for a period of three years following the end of his employment.

115.    Mr. Bauer breached the QLS APA by forming and/or assisting in the formation of ReNew You, individually and/or by and through Mrs. Bauer and Life Time's consulting physician, Dr. Yarish.

116.    Mr. Bauer breached the QLS APA by engaging in acts that constitute conflicts of interests, including by engaging in direct or indirect business connections with Life Time's competitors, other than on behalf of Life Time and simultaneously advancing the interests of a competitor.  Mr. Bauer's affiliation and/or involvement with ReNew You constitutes a conflict of interest, as ReNew You is a competitor of Life Time, and Mr. Bauer was not acting to advance Life Time's interests through his dealings with ReNew You. Further, Mr. Bauer was advancing the interests of ReNew You during his employment with Life Time.

117.    Mr. Bauer also breached the QLS APA by interfering with the business of Life Time by and through his interference with or disruption of Life Time's relationship with, and his employment or attempted employment, of Jennifer Becker Hutchinson, Sarah Shelby Hight, and Monica Adamo, to work at ReNew You.

118.    Mr. Bauer breached the QLS APA by interfering with the business of Life Time through his interference with and disruption of Life Time's relationship with its vendors, agents or representatives.   Specifically, Mr. Bauer interfered with and disrupted Life Time's business relationship with its vendor, Dr. Robert Scott Yarish, the consulting physician for its medi-spas in Houston, when in mid-2015, Mr. Bauer teamed up with Yarish to form a competing business, ReNew You, rather than advance Life Time's interest in a continued contractual relationship.

119.    Upon information and belief, Mr. Bauer also interfered with and disrupted Life Time's relationship with LabCorp, Life Time's vendor for blood testing services, by using his relationship with Life Time to secure a business relationship with LabCorp in furtherance of ReNew You's blood testing services, which directly and indirectly competes with Life Time's blood testing services, during his employment with Life Time.

120.    Upon information and belief, Mr. Bauer also interfered with and disrupted Life Time's relationship with Thorne, Life Time's vendor for nutritional supplements, by using his relationship with Life Time to secure a business relationship with Thorne in furtherance of ReNew You's nutritional supplements, which directly and indirectly competes with Life Time's nutritional supplements, during his employment with Life Time.

121.    As a direct and proximate result of Mr. Bauer's breaches of contract, Life Time has been damaged.  Life Time is further entitled to recover attorney's fees, costs and expenses.

**Count 3:**        **Breach of Fiduciary Duties by Kyle Bauer.**

122.    Life Time incorporates by reference the foregoing paragraphs herein.

123.    At all times relevant, Mr. Bauer owed Life Time a fiduciary duty not to take, use, or disclose its confidential and proprietary information during or after his employment.  Mr. Bauer breached this duty by misappropriating Life Time's data, confidential and proprietary information, and trade secrets.

124.    Mr. Bauer also owed Life Time the duties of loyalty, candor, to deal fairly in all transactions, and to deal openly and to fully disclose to Life Time information that would affect Life Time's business.  Mr. Bauer breached these duties by (a) pursuing opportunities with ReNew You during his employment; (b) misappropriating Life Time's data, confidential and proprietary information, and trade secrets; and (c) failing to fully disclose his involvement with ReNew You, Dr. Yarish, and Mrs. Bauer.

125.    Mr. Bauer also breached his fiduciary duties by usurping corporate opportunities from Life Time.  During his five-year employment as Regional Vice President, Mr. Bauer was given confidential and proprietary information regarding Life Time's business and marketing plans and models, and access to vendors, such as Dr. Yarish, to benefit Life Time, not himself or third parties. Mr. Bauer participated, on behalf of himself and third parties, in the development and operation of ReNew You, a business opportunity that Mr. Bauer should have presented to Life Time, during his employment as a high-level executive with Life Time and through the relationships he developed with Life Time's vendors and employees.  By failing to disclose ReNew You to Life Time as a business opportunity for Life Time, Mr. Bauer improperly stole this business opportunity from Life Time, to the detriment of Life Time, and in furtherance of his

own personal and financial interests, as well as the interests of third parties, including ReNew You.

126.   Mr. Bauer also breached his fiduciary duties by misappropriating Life Time's confidential information to unfairly compete against Life Time, and to benefit ReNew You. ReNew You should be enjoined from offering the Competing Spa and Medi-Spa Services and the Competing Health and Wellness Services described above because the offering of such services constitutes unfair competition.

127.   As a direct and proximate result of Mr. Bauer's breach of his fiduciary duties, Life Time has been damaged and Mr. Bauer has gained and benefitted and will continue to do so.

**Count 4:        Misappropriation of Trade Secrets by Kyle Bauer and ReNew You.**

128.   Life Time incorporates by reference the foregoing paragraphs herein.

129.   Mr. Bauer and ReNew You misappropriated Life Time's trade secrets.

A.        A.        Life Time's pricing and marketing data and proprietary program details and strategies are trade secrets;

B.        B.        Mr. Bauer, in his individual capacity and as an owner/agent of and for the benefit of ReNew You, breached a confidential relationship with Life Time;

C.        C.        Mr. Bauer's creation of and/or involvement with ReNew You, a competitor of Life Time, or any other competitors of Life Time, will inevitably result in the misuse of Life Time's trade secrets; and

D.        D.        Life Time will suffer severe damages by loss of its competitive advantage as a result of Mr. Bauer's and ReNew You's actions.

E.        Mr. Bauer's involvement, individually and/or by and through Mrs. Bauer, with ReNew You, a direct competitor of Life Time, also will result in the inevitable disclosure of Life Time's

trade secrets and the inevitable use of these trade secrets by ReNew You, Life Time's competitor.   ReNew You, 50% owned by Bauer, will also be the beneficiary of Mr. Bauer's misappropriation.

**Count 5:      Violation of the Texas Uniform Trade Secrets Act by Kyle Bauer and ReNew You.**

130.    Life Time incorporates by reference the foregoing paragraphs herein.

131.    Under the Texas Uniform Trade Secrets Act, Section 134A.001, *et seq*. of the Texas Code of Civil Practice & Remedies, a person may not, by improper means, use or disclose another's trade secrets.

132.    Life Time's pricing and marketing data, financial data, and proprietary program details and strategies are trade secrets, which are used in Life Time's business Life Time owns these trade secrets.

133.    Life Time's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.  Life Time's trade secrets provide it an opportunity to obtain a competitive advantage over competitors.

134.    Life Time took reasonable steps to protect and maintain the secrecy of its trade secrets, including but not limited to by its use of employment policies, practices and contracts that protect its business information as confidential.

135.    In Mr. Bauer's position as Life Time's Regional Vice President, he had a duty to maintain the secrecy of Life Time's trade secrets.

136.    Mr. Bauer breached his duty to maintain Life Time's trade secrets.

137.    Through the acts described herein, Mr. Bauer, in his individual capacity and as an owner/agent of and for the benefit of ReNew You, knowingly and by improper means used, disclosed, and misappropriated Life Time's trade secrets without Life Time's consent.

138.    The misappropriation was willful and malicious, with an intent to injure Life Time.

139.    ReNew You, 50% owned by Mr. Bauer, will also be the beneficiary of Mr. Bauer's misappropriation.  ReNew You derived its knowledge of Life Time's trade secrets through Mr. Bauer's improper means or through means that required Mr. Bauer to maintain the secrecy of Life Time's trade secrets.  ReNew You either has misappropriated Life Time's trade secrets or will misappropriate Life Time's trade secrets.

140.    Life Time has suffered damages as a result of Mr. Bauer's and ReNew You's unlawful actions, and is entitled to all relief available under the Texas Uniform Trade Secrets Act, including but not limited to injunctive relief, monetary damages, royalties, exemplary damages, and attorneys' fees.

**Count 6:        Tortious Interference with Prospective Contracts by Kyle Bauer.**

141.    Life Time incorporates by reference the foregoing paragraphs herein.

142.    Mr. Bauer tortiously interfered with prospective contractual relations:

A.      There was a reasonable probability that Life Time would have entered into a contractual relationship with ReNew You or future agreements with Dr. Yarish, given that ReNew You and Dr. Yarish are in the same business as Life Time and Dr. Yarish was the consulting physician for Life Time's MediSpas in Houston;

B.      Mr. Bauer had knowledge of the prospective contractual relationship, and committed a malicious and intentional act that prevented the relationship from continuing, with the purpose of harming Life Time;

C.      Mr. Bauer lacked privilege or justification to do the act, and

D.      Life Time was actually harmed or damaged as a resulted from his interference.

**Count 7:      Tortious Interference with Existing Contracts by Kyle Bauer, Monica Bauer, and ReNew You.**

143.    Life Time incorporates by reference the foregoing paragraphs herein.

144.    Mr. Bauer, Ms. Bauer and ReNew You tortiously interfered with the QLS APA because:

A.      The QLS Asset Purchase Agreement signed by Mr. Bauer is a valid contract subject to interference;

B.      Mrs. Bauer, in her individual capacity and as an agent of and for the benefit of ReNew You, committed a willful and intentional act of interference, by violating the confidentiality and non-compete provisions of the Asset Purchase Agreement by and through Mr. Bauer's involvement with forming, operating, and/or otherwise assisting ReNew You, a direct competitor of Life Time;

C.      Such act was a proximate cause of damages in loss of business, business opportunities, and reputation to Life Time, and

D.      Actual damage or loss occurred.

145.    Mr. Bauer, Ms. Bauer and ReNew You tortiously interfered with Life Time's contract with Yarish because:

A.      The Management Services Agreement signed by Yarish is a valid contract subject to interference,

B.      Mr. and/or Mrs. Bauer, in their individual capacities and as owners/agents of and for the benefit of ReNew You, committed a willful and intentional act of interference, by violating the exclusivity provision of the Management Services Agreement by and through their involvement with forming and operating ReNew You, a direct competitor of Life Time,

C.   Such act was a proximate cause of damages in loss of business, business opportunities, and reputation to Life Time, and

D.   Actual damage or loss occurred.

146.   Mr. Bauer and ReNew You tortiously interfered with Ms .Becker's Non-Compete Agreement because:

A.   The Non-Compete Agreement between Life Time and Ms. Becker is a valid contract subject to interference;

B.    Mr. Bauer, in his individual capacity and on behalf of and for the benefit of ReNew You, committed willful and intentional acts of interference, by offering and soliciting Ms. Becker for employment with Renew You in direct contravention of that non-compete agreement.

C.   Such actions were the proximate cause of damage to the business and employment relationships between Life Time and Ms. Becker.

147.   Mr. Bauer, Ms. Bauer and ReNew You tortiously interfered with Ms. Hight's Non-compete Agreement because:

A.    The Non-Compete Agreement between Ms. Hight and Life Time is a valid contract subject to interference;

B.    Upon information and belief, Mr. Bauer and/or the other Defendants committed willful and intentional acts of interference, by offering and soliciting Ms. Height for employment with Dr. Yarish in direct contravention of that non-compete agreement;

C.   Such actions were the proximate cause of damage to the business and employment relationships between Life Time and Ms. Height.

**Count 8:      Conspiracy by Kyle Bauer, Monica Bauer, and ReNew You.**

148.   Life Time incorporates by reference the foregoing paragraphs herein.

33

149.    Defendants committed conspiracy by working together to violate Mr. Bauer's breach of common law and contractual obligations owed to Life Time, and to benefit from their breach.

150.    Defendants committed conspiracy by agreeing to compete with Life Time and by agreeing to work together to violate Mr. Bauer's contractual obligations and fiduciary duties, and to benefit from those breaches.

151.    Defendants committed unlawful, overt acts by openly and actively opening a competing business less than four miles away from Life Time's City Centre club.   Upon information and belief, Mr. Bauer committed unlawful, overt acts by using Life Time's computer(s), computer network, and/or computer system without the consent of Life Time, and by obtaining and using Life Time's confidential information without its consent and for improper purposes.   Such acts were to benefit Defendants.

152.    Life Time has been substantially damaged by Defendants' actions.

**Count 9:       Aiding and Abetting Breach of Fiduciary Duties by Monica Bauer and ReNew You.**

153.    Life Time incorporates by reference the foregoing paragraphs herein.

154.    Mr. Bauer committed torts and breached agreements as described herein.    Upon information and belief Mrs. Bauer, in her individual capacity and as an agent of and for the benefit of ReNew You, knew of and participated in tortious acts with Mr. Bauer; intended to, and did, assist him in carrying out the acts, and/or assisted and encouraged him to carry out these acts and benefited from such wrongful acts.   Assistance with and/or encouragement to commit the acts were substantial factors in causing harm by the wrongful conduct.

## VII.   Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction

155.   Life Time asks the Court to enter a temporary restraining order, preliminary injunction and permanent injunction requiring that:

A.   Defendant ReNew You cease and desist all operations.

B.   Defendant ReNew You be barred from offering and/or providing services that are provided by Life Time, including the Competing Spa and Medi-Spa Services and the Competing Health and Wellness Services.

C.   Defendants account for all data, documents, electronic media of any kind, and technical information taken from Life Time;

D.   Defendants be ordered to, under the supervision of Life Time or its designated representative produce any computer they have used for any reason from January 2015 to the present for independent forensic examination;

E.   Defendants return to Life Time all data, documents, electronic media of any kind taken from Life Time that are still in Defendants' possession or that Defendants may have possessed at one time but have placed in bailment or in the custody and/or control of any other person, entity, or any other person or entity's computer, laptop, server, or other hardware;

F.   Defendants be ordered to, under the supervision of Life Time or its designated representative, destroy and delete any copies of Life Time's data, documents, electronic data of any kind, or technical information in their possession;

G.   Mr. Bauer be ordered not to disclose any Life Time confidential or trade secret information;

H.   Mrs. Bauer be ordered not to disclose any Life Time confidential or trade secret information;

I. ReNew You be ordered not to disclose any Life Time confidential or trade secret information;

J. Mr. Bauer be prevented from working for, providing services to, operating, and/or otherwise being involved with ReNew You or any other competitor of Life Time beginning on the date the Court issues the injunction, for a period of three years;

K. Mrs. Bauer be prevented from working, providing services to, operating, and/or otherwise being involved with ReNew You or any other competitor of Life Time beginning on the date the Court issues the injunction;

L. Defendants disclose the names and identities of all persons and/or businesses to whom they have provided Life Time's confidential information, trade secrets and/or proprietary information;

M. Defendants provide expedited discovery to Plaintiffs, including the following:

 1. Kyle Bauer appear for deposition with certain documents and tangible things to be requested by Plaintiffs via subpoena duces tecum as set forth in Exhibit 12;

 2. Monica Bauer appear for deposition with certain documents and tangible things to be requested by Plaintiffs via subpoena duces tecum as set forth in Exhibit 13;

 3. ReNew You produce Dr. Yarish for deposition, and to produce information and documents related to ReNew You pursuant to Life Time's subpoena duces tecum as set forth in Exhibit 14; and

4.     ReNew you appear for deposition via a designated corporate representative with certain documents and tangible things to be requested by Plaintiffs via subpoena duces tecum as set forth in Exhibit 15.

5.     ReNew You produce Sarah Hight for deposition with certain documents and tangible things to be requested by Plaintiffs via subpoena duces tecum as set forth in Exhibit 16.

156.   To obtain a preliminary injunction, Life Time must show (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) that their threatened injury outweighs the threatened harm to Defendants, and (4) that granting the preliminary injunction will not disserve the public interest. *PCI Transportation, Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

a.     *Causes of Action*.   The factual allegations contained in the foregoing paragraphs of this Complaint provide ample evidence to sustain the causes of action alleged herein.   These factual allegations and the causes of action contained in the foregoing paragraphs of this Complaint are fully incorporated herein, and Life Time relies upon these paragraphs in their application for a temporary restraining order and preliminary injunction.

b.     *Substantial Likelihood of Success*.   Life Time has a substantial likelihood of success in obtaining the relief they seek against Defendants.   Mr. Bauer was a former Regional Vice President for Life Time under a fiduciary obligation not to disclose or use for his benefit the confidential data and trade secrets of Life Time to which he was provided access during his employment.   Mr. Bauer agreed to maintain the confidentiality of such information.   Further, Mr. Bauer had a legal obligation not to harm or damage the integrity of

Life Time's data maintained on its computer systems.  Mr. Bauer violated these obligations when, prior to the termination of his employment, Mr. Bauer improperly used Life Time's confidential data and trade secrets to form and operate, or assist in the formation and operation of, ReNew You, a direct competitor of Life Time.  Moreover, Mr. Bauer executed a valid contract which prohibits him from competing, directly or indirectly, with the business of Life Time within three years of termination of his employment.  Mr. Bauer further violated his legal obligations by advancing the interests of ReNew You by providing confidential information and trade secrets to his wife, Mrs. Bauer, and Dr. Yarish, who are both co-owners and/or operators of ReNew You.

    c. *Balance of Harm.*  The imminent harm with which Life Time is faced greatly exceeds any harm Defendants will incur if they are enjoined.  Mr. Bauer's employment and/or involvement with ReNew You explicitly violates Mr. Bauer's Asset Purchase Agreement. The non-compete provision agreed to by Bauer was formed in connection with Life Time's purchase of QLS for $5.4 million, Mr. Bauer's prior business and not in connection with his employment with Life Time.  Moreover, Defendants' involvement with ReNew You presents a tangible risk of disclosure of the confidential and proprietary information Mr. Bauer misappropriated from Life Time.  Life Time is in imminent danger because Defendants are in possession of, and either have already used or intend to use Life Time's confidential, proprietary, and trade secret information to Life Time's detriment.  The only way in which Life Time may be protected from this tortious use of their property is for Defendants to be required to return or destroy any confidential information in their possession, or retrieve and destroy all such information which they may have placed in the care, custody, or control of others, and then temporarily and permanently be enjoined from using the information illegally taken from Life

Time.  The Court should also order Defendants to produce any and all computers they have used since January 2015 for independent forensic examination.  Additionally, Life Time has already suffered and continues to suffer irreparable harm as long as the Mr. Bauer and Mrs. Bauer remain involved with and continue to operate ReNew You.  To the extent Defendants are harmed by the injunctive relief requested, it will be the result of their own wrongful, illegal conduct, and such harm will be far less than the harm Life Time will suffer if Defendants are not enjoined.

          d.     *Irreparable Injury.*  Life Time has been and will continue to be irreparably harmed if (1) Defendants are allowed to maintain possession of Life Time's confidential information, (2) the Bauers remain involved with ReNew You, and (3) ReNew You continues to operate its competing business in violation of the Asset Purchase Agreement.  Mr. Bauer's ownership of and/or involvement with any competitor of Life Time is in violation of his contractual and fiduciary obligations and undermines Life Time's current and potential competitive position in the spa, medi-spa and health and wellness markets.  Further, the information Mr. Bauer misappropriated while employed with Life Time will inevitably assist ReNew You in gaining a competitive advantage over Life Time in the relevant territories.  Life Time disclosed the information to Mr. Bauer solely for use in his position as a Regional Vice President for Life Time's benefit, not for the benefit of himself or a third party.  Once this competitive advantage is lost, it can never be regained by Life Time.  Life Time has no adequate remedy at law because unless Defendants are enjoined from retaining Life Time's confidential data and trade secrets and from working for, providing services to, operating, and/or otherwise being involved with ReNew You, Life Time will have no means by which to recover the value of the information wrongfully taken and maintained by Defendants.

e.      _Public Interest._   The public interest will not be disserved by granting a preliminary injunction in favor of Life Time (1) restraining the Bauers from working for, providing services to, operating, and/or otherwise being involved with ReNew You and making use of Life Time's confidential data, (2) restraining ReNew You from further operations, and (3) requiring Defendants to return the information to Life Time. In fact, the public interest will be served as Mr. Bauer will be prevented from violating his contractual and common law obligations and from making use of Life Time's confidential information.  An injunction will serve to prevent unfair competition within a significant and important industry and reinforce the obligation of business competitors to compete on a fair and legitimate basis.  Further, injunctive relief will impact only Defendants, and will have no impact on the public interest.  Such relief is necessary because unless the Bauers are ordered and enjoined by this Court from engaging in their improper relationship with ReNew You, the existence of which is also improper and must cease, and from retaining Life Time's confidential and proprietary information and/or disclosing it to others, Life Time will have no means by which to address the past and continued irreparable harm resulting from Defendants' wrongful conduct.

It is essential that the Court immediately and temporarily restrain Defendants as set forth above. In order to preserve the status quo and the property and rights of Life Time during the pendency of this action, Defendants should be cited to appear and show cause why they should not be restrained, during the pendency of this action, from the actions detailed above.

## VIII.   Bond

157.    Life Time is not opposed to posting a reasonable bond if ordered to do so by the Court.

## IX.      Damages

158.    In addition to the emergency and injunctive relief contained herein, Life Time has suffered damages in an amount that exceeds the jurisdictional limits of this Court.

## X.      Legal Fees

159.    Life Time requests attorney's fees and expenses as allowed under applicable state and federal law.

## XI.      Prayer for Relief

160.    WHEREFORE, Life Time seeks the following:

    a.  a temporary restraining order and a temporary injunction, along with preliminary and permanent injunctive relief, consistent with the request set forth in the above section captioned Application for Temporary Injunction, Restraining Order, Preliminary Injunction, and Permanent Injunction, which is incorporated fully herein by reference;

    b.  disgorgement of the salary and other substantial payments Defendant Kyle Bauer received from Life Time, in consideration for his loyalty and services to Life Time, while working on and/or otherwise being involved with ReNew You matters; and

    c.  payment by Defendants to Life Time of reasonable royalties for misappropriating confidential information and trade secret.

Life Time also requests all available monetary damages, including but not limited to actual and exemplary damages; all available injunctive relief; that they have their costs, attorneys' fees, and pre-judgment and post-judgment interest incurred in their behalf paid by

Defendants; and for all such other and further relief, general and special, legal and equitable, to which Life Time is justly entitled.

Respectfully submitted,

*/s/ Carolyn Russell*

Carolyn Russell
State Bar No. 24003913
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, Texas 77002
713.655.0855
713.655.0020 (Fax)
carolyn.russell@ogletreedeakins.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

**OF COUNSEL:**

Stephen J. Quezada
State Bar No. 24076195
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, Texas 77002
713.655.0855
713.655.0020 (Fax)
stephen.quezada@ogletreedeakins.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a true and correct copy of the foregoing paper on Defendants' counsel who stated that she would accept service on behalf of Defendants, as follows:

Kimberly Spurlock
Spurlock & Associates, P.C.
17280 West Lake Houston Parkway
Humble, Texas 77346
281.548.0900 (Phone)


*/s/ Carolyn Russell*
Carolyn Russell